IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD ROBERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-1147-MAB |
| | ) |
| JASON MORRIS, | ) |
| MARCELLUS OTTENSMEIER, and | ) |
| JUSTIN MOORE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Justin Moore, Jason Morris, and Marcellus Ottensmeier (Doc. 27). For the reasons explained below, the motion is granted.

### BACKGROUND

In October 2019, Plaintiff Edward Roberson, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed a pro se civil rights action alleging violations of his constitutional rights at Menard Correctional Center. *Roberson v. Lawrence, et al.*, SDIL Case No. 19-cv-1188. The original complaint only contained allegations about a dental issue. *Id.* at Doc. 1; *see also* Doc. 12. It was dismissed for failure to state a claim because Plaintiff did not connect any of the listed Defendants to the allegations. *Id.* at Doc. 12. Plaintiff filed an amended complaint on May 28, 2020, which contained additional allegations beyond the dental issue. *Id.* at Doc. 14. Several claims were severed into the

instant lawsuit (Doc. 1). Those claims encompass the following allegations.

Plaintiff alleges that on April 8, 2020, Defendant Jason Morris refused to give him a kosher food tray (Doc. 1, Doc. 13). When Plaintiff said he would file a grievance, Morris responded by threatening to withhold meals, showers, and mail and then Morris shut off the water to Plaintiff's cell. The following morning, Defendant Justin Moore refused Plaintiff's requests to turn the water back on and to speak with a "white shirt." At lunch, Plaintiff stuck his hand in the chuckhole on his cell door and asked to speak to a white shirt. Defendant Marcellus Ottensmeier closed the chuckhole door on Plaintiff's hand while Defendant Moore banged on, hit, and kneed Plaintiff's hand. Plaintiff alleges that he suffered multiple fractures, bruising, and bleeding, but Moore and Ottensmeier refused his requests for medical attention. Later that day, Defendant Morris wrote something on Plaintiff's cell door directing other prison staff to mistreat Plaintiff and refused Plaintiff a shower, a dinner tray, and "probably mail."

Following a threshold review of Plaintiff's allegations pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

> **Count 6:** Eighth Amendment conditions of confinement claim against Morris for refusing to serve Plaintiff his kosher tray, threatening Plaintiff, shutting off the water to his cell, not issuing Plaintiff his mail, denying him showers, and directing other staff to mistreat him.
>
> **Count 8:** Eighth Amendment excessive force claim against Ottensmeier for closing Plaintiff's hand in the chuckhole door and against Moore for striking Plaintiff's hand while the chuckhole door was closed on it.
>
> **Count 9:** Eighth Amendment deliberate indifference to serious medical needs claim Fourteenth Amendment due process claim against Ottensmeier and Moore for denying Plaintiff medical treatment after his hand was injured in the chuckhole door.

(Doc. 13).

Defendants Moore, Morris, and Ottensmeier filed a motion for summary judgment in August 2021, arguing that Plaintiff failed to exhaust his administrative remedies as to any of the issues raised in this case (Doc. 27; *see also* Doc. 28). Plaintiff filed a response in opposition to the motion for summary judgment (Doc. 30). Defendants did not file a reply. An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on December 7, 2021 (Doc. 35). Plaintiff was the only witness who testified at the hearing. After hearing his testimony and the oral arguments from both parties, Plaintiff was given leave to file a supplemental memorandum with additional legal arguments. He filed his supplemental response brief on December 15, 2021 (Doc. 36). Defendants then filed a supplemental reply (Doc. 39). And Plaintiff filed a sur-reply, which is not permitted by the Local Rules (Doc. 41). *See* SDIL-LR 7.1(c) ("Under no circumstances will sur-reply briefs be accepted.")

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A]

judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations first require an offender to submit a grievance to

their counselor within 60 days of the incident, occurrence, or problem. *Id.* at § 504.810(a).[1] After the counselor responds, the grievance goes to the grievance officer, who tenders a recommendation to the warden within two months after receipt of the written grievance, "when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The warden then reviews the recommendation and advises the offender of a decision in writing. *Id.* If the offender is unsatisfied with the warden's decision, the offender has 30 days to appeal to the Administrative Review Board. *Id.* at § 504.850(a).

## FACTS

Defendants submitted records showing that the ARB received five grievances from Plaintiff between April 2020 (the date of the alleged incidents) and October 2020 (the date Plaintiff's claims were severed into the instant case) (Doc. 28; *see* Doc. 28-4).[2] One of those grievances pre-dated the incident at issue (Doc. 28-4, pp. 33–40). None of these five grievances are related to the allegations raised in this matter, and in fact, one of them even pre-dated the incident at issue (Doc. 28, Doc. 28-4).

In response, Plaintiff argued that he submitted other grievances regarding the incidents at issue, but he never received responses (Doc. 30). Specifically, he asserted in both his complaint and his response brief to the motion for summary judgment that he

---

[1] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

[2] Defendants take the position that Plaintiff was required to exhaust his administrative remedies prior to May 28, 2020, when the present claims were raised in the Amended Complaint in case 19-cv-1188, from which the instant case was severed (Doc. 28, p. 3, n.10). However, out of an abundance of caution, Defendants analyzed Plaintiff's efforts to exhaust his administrative remedies up until the date the Complaint was re-filed in the present case following severance (*Id.*).

filed a grievance on April 8, 2020, that went unanswered (Doc. 2, p. 14, ¶40; Doc. 30, p. 4). He said that the grievance was about "Officer Morrison's actions and intentions" (Doc. 2, p. 14, ¶40). Plaintiff also asserted in both his complaint and his response brief that he filed another grievance on April 9, 2020 that went unanswered "concerning the matter," which appears to mean the grievance was about officers refusing to turn his water back on, trapping his hand in the chuckhole door, refusing to provide him with medical care for his hand, and directing other prison staff "to inflict hate toward [him]" (Doc. 2, p. 14, ¶53; *see also id.* at pp. 14–16, ¶¶41–52; Doc. 30, p. 4).

Plaintiff testified that he was in segregation at the time he wrote both the April 8th or April 9th grievances. He submitted them by handing them to the correctional officer and he watched the officer put them in the grievance lock box. Plaintiff did not keep a copy of either grievance.

Plaintiff provided a copy of a kite that he submitted on April 28 or 29, 2020, to his counselor, indicating he had filed grievances on April 8th and April 9th but had not received a receipt confirming that the grievances were received (Doc. 30, pp. 4, 11; *see also* Doc. 2, p. 16).[3] His counselor responded, stating, "Need to re-submit. Grievance Office did not receive them. Not in computer" (Doc. 30, p. 11).

What happened from this point forward is unclear because Plaintiff told a couple different stories. In his written response to the motion for summary judgment, Plaintiff

---

[3] It is unclear when this kite was submitted. At the top of the kite, it says "Date: 4-28-20," but at the bottom of the kite next to Plaintiff's signature, it says "Date: April 29, 2020" (Doc. 30, p. 11). For sake of ease, the Court will refer to this document as the April 28th kite throughout this Order.

stated that prison staff refused to provide him with any additional grievance forms or process any of his grievances "from the time of the alleged incident until the issue was out of time," meaning when his sixty-day window to submit a grievance expired (Doc. 30, p. 5).[4] Similarly, according to the allegations in the amended complaint, Plaintiff was unable to get a grievance form by the time he authored the document on May 20, 2020[5] (Doc. 2, p. 16, ¶56) ("Plaintiff was told to resubmit grievance but grievance are very hard to come by therefor Plaintiff hasn't been able to redress grievance.") But within a couple days, he was apparently able to obtain a grievance form because he asserted that he filed a grievance "concerning the matters in this comp[laint]" on May 28, 2020 (Doc. 30, p. 5). He claimed that he sent another kite to his counselor on June 13, 2020, to inquire about the status of this grievance (Doc. 30, p. 5). He provided a copy of this kite, which states in pertinent part, "I filed a grievance the other day did you see anything?" (Doc. 30, p. 12). His counselor responded, "There isn't any record of a grievance being received" (Doc. 30, p. 12).

Additionally, before Plaintiff even knew the May 28th grievance had not been

---

[4] He cites to pages 5–6 of the cumulative counseling summary as proof that he did not submit any grievances from sometime in April 2020 (the date is scratched out) to June 8, 2020 (Doc. 30, p. 5). However, the cumulative counseling summary is not part of the record in this case. But it is part of the evidence submitted with the motion for summary judgment on the issue of exhaustion in the original case. *Roberson v. Lawrence, et al.*, SDIL Case No. 19-cv-1188, Doc. 50-2. The cumulative counseling summary indeed does not reflect that Plaintiff filed any grievances between April 8 and June 8, 2020, just like he said. *See id.* at pp. 5–6. The prison's grievance log reflects the same. *Id.* at Doc. 50-6, pp. 8–14.

[5] The complaint indicates that it was authored on May 20, 2020, it was postmarked May 22, 2020, and it was received by the Court and filed on May 28, 2020, *Roberson v. Lawrence, et al.*, SDIL Case No. 19-cv-1188, Doc. 14, pp. 21, 22.

received—meaning before he sent the kite to his counselor—he submitted another grievance dated June 10, 2020, which was received on June 15th (Doc. 30, p. 4 (citing "grievance record (GR) pg. 0172 #149-6-20")).[6] *Roberson v. Lawrence, et al.*, SDIL Case No. 19-cv-1188, Doc. 50-6, pp. 14, 75–77; *see also id.* at Doc. 50-2, p. 5. In this grievance, Plaintiff complained about a dental issue and about the events of April 8th and 9th. *Id.* at Doc. 50-6, pp. 75–77.[7] The counselor responded on June 19th. *Id.* As to the first issue—the dental issue—she responded with a memo from the health care unit. *Id.* As to the second issue—the events of April 8th and 9th—she responded by saying the issue was "out of timeframe." *Id.* The grievance with the counselor's response was returned to Plaintiff on June 22nd. *Id.* at Doc. 50-2, p. 5; Doc. 50-6, p. 14. There is no indication that Plaintiff ever sent the grievance on to the grievance officer. *See id.* at Doc. 50-2, pp. 4–5; Doc. 50-6, p. 14. Plaintiff said that after he received the "response" (presumably meaning the counselor's response), he mailed the grievance to the ARB but never heard back (Doc. 30, p. 4). There is no record of the ARB receiving grievance #149-6-20 (*see* Doc. 28-3).

At the *Pavey* hearing, Plaintiff told a different story as to what he did after he received his counselor's response to the April 28th kite. Plaintiff testified that he

---

[6] This document is also not part of the record in the present case but is available in the original case. *Roberson v. Lawrence, et al.*, SDIL Case No. 19-cv-1188, Doc. 50-6.

[7] It appears that part of the grievance is cut off/missing. *Roberson v. Lawrence, et al.*, SDIL Case No. 19-cv-1188, *see* Doc. 50-6, pp. 76–77. The first page ends with Plaintiff talking about the dentist and the second page begins, mid-sentence, with Plaintiff talking about Defendant Morris's threats on April 8th and then continues on to discuss the events of April 9th. *See id.* Notably, nowhere in this version of the grievance does Plaintiff say that he was previously unable to grieve the issue because he could not get a grievance form, nor does he mention a missing grievance from May 28, 2020. *See id.*

resubmitted the grievances "that same day" he received his counselor's response. During his testimony, Plaintiff did not mention any problems with getting grievance forms. He said he never received a receipt that the newly-submitted grievances had been received. He said he wrote to the counselor, perhaps in early June (the 4th or the 5th), to ask about the status of the grievance but never received a response. There is no copy of this purported kite nor is it mentioned anywhere else in the record. He also did not mention the May 28, 2020, that he claimed to have submitted in his response brief. Plaintiff was then asked if he had any face-to-face interactions with his counselor where he asked about the status of the grievance. He responded that he spoke to his counselor when she did a walk-through the segregation unit, and she told him that she did not remember anything and he probably had to submit the grievance again, which led to him resubmitting it around June 10th.

## Discussion

### A. Cut-off Date for Exhaustion

As an initial matter, the Court will discuss the date by which Plaintiff had to exhaust his administrative remedies. The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). "By its plain terms, the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a "'sue first, exhaust later' approach is not acceptable." *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (citing *Ford v. Johnson*, 362 F.3d 395, 398–400 (7th Cir. 2004)).

The Seventh Circuit Court of Appeals held that, for purposes of the PLRA's exhaustion requirement, "an action is 'brought' . . . when the complaint is tendered to the district clerk." *Ford*, 362 F.3d at 400. *See also Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2015) (under the prison mailbox rule, a prisoner's complaint is deemed filed "at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk") (citation omitted). Therefore, the date a prisoner submits a complaint to the Court for filing is the operative date in determining exhaustion, regardless of "whether the complaint was screened at a later date pursuant to 28 U.S.C. § 1915A, whether Plaintiff paid his filing fee or was granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915 after submitting his complaint, or whether the action is severed pursuant to the PLRA." *Washington v. Goldsborough*, No. 13-CV-613-NJR-DGW, 2015 WL 4624167, at *7 (S.D. Ill. Aug. 3, 2015). *See also Gakuba v. Pannier*, No. 19-CV-1274-NJR, 2021 WL 1165114, at *4 (S.D. Ill. Mar. 26, 2021) (concluding prisoner was required to exhaust by the time he filed his original complaint, not by the time his claim was severed into a new case). Holding differently would frustrate the purpose of the PLRA, which is to require exhaustion prior to the Court's involvement. *Washington*, 2015 WL 4624167, at *7 (citing *Ford*, 362 F.3d at 398–99).

Here, the claims at issue were first asserted in Plaintiff's amended complaint in his original suit. *Roberson v. Lawrence, et al.*, SDIL Case No. 19-cv-1188, Doc. 14. The amended complaint indicates that it was authored on May 20, 2020, post-marked on May 22, 2020, and filed on May 28, 2020. *Id.* at pp. 21, 22. Therefore, Plaintiff likely had to have exhausted these claims by the time the complaint was in the mail system on May 22, 2020,

but certainly by the time the Clerk of Court received and filed the complaint on May 28, 2020.

### B. Did Plaintiff Exhaust in Time or Was the Process Rendered Unavailable?

"[A]n inmate need only exhaust those remedies that are 'available' under the prison's procedures." *Ebmeyer v. Brock*, 11 F.4th 537, 542 (7th Cir. 2021) (citing *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016)). "Remedies that are genuinely unavailable or nonexistent need not be exhausted." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018) (quoting *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)). *Accord Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate . . . must exhaust available remedies but need not exhaust unavailable ones.").

Availability means that the remedy is "'capable of use' to obtain 'some relief for the action complained of." *Ross*, 578 U.S. at 642 (citation omitted). While there are various circumstances in which an administrative remedy is unavailable and not capable of use to obtain relief, *id.* at 643–44, the primary circumstance is "affirmative misconduct" by prison officials that prevents prisoners from pursuing administrative remedies. *Hernandez*, 814 F.3d at 842 (citing examples, such as, when officials do not respond, tell the inmate they cannot file a grievance, refuse to provide grievance forms, threaten the inmate, *etc.*). *See also Ross*, 578 U.S. at 644 (explaining that one of the circumstances in which administrative remedies are unavailable is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."). But a grievance procedure can also be unavailable even in the absence of affirmative misconduct. *Lanaghan*, 902 F.3d at 688 (citing examples,

such as, when the inmate is physically incapacitated). Therefore, the proper focus is not whether prison officials engaged in affirmative misconduct, but whether the prisoner was unable to file a grievance within the allowable time period through no fault of his own. *Id.* The availability of the grievance process is a fact-specific inquiry. *Id.* The unavailability of the grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez*, 814 F.3d at 840.

None of the five grievances discussed by Defendants can serve to exhaust Plaintiff's claims in this case. As previously mentioned, none of them relate to the incidents that serve as the basis for Plaintiff's claims, and in fact, one of them even pre-dated the incident at issue (Doc. 28, Doc. 28-4).

Plaintiff, however, asserts there were other grievances. In particular, he testified that he submitted grievances on April 8 and 9, 2020 pertaining to the incidents that occurred on those dates. The Court finds Plaintiff's testimony credible. Indeed, it is corroborated by the kite he sent to his counselor approximately three weeks later asking if the grievances had been received. It is undisputed that these grievances did not go all the way through the grievance process, and therefore the Court must ask whether the grievance process was rendered unavailable.

Plaintiff's counselor indicated that the April 8th and 9th grievances had not been received, but even if the Court assumes this to mean that the grievances were lost or mishandled by prison officials, the Court believes the grievance process remained available to Plaintiff. In particular, the counselor's response conveyed there were further steps Plaintiff could take; specifically, he was explicitly told to resubmit the grievances.

And he still had plenty of time within in the allowable 60-day window to submit new grievances regarding the events of April 8th and 9th for consideration. Stated differently, Plaintiff was alerted that his grievances had not been received in time to file a new grievance. *Cf. Reid v. Balota*, 962 F.3d 325, 330 (7th Cir. 2020) (grievance process rendered unavailable where offender did not receive a response to his non-emergency grievance, and when he complained about it in a subsequent grievance, he did not receive any useful information as to how to proceed); *Dole v. Chandler*, 438 F.3d 804, 807–08, 809–10 (7th Cir. 2006) (grievance process rendered unavailable where offender mailed his grievance to the ARB and when he inquired about its status, the ARB told him they had no record of the grievance but did not provide him any instructions on how to proceed and the window for filing a new grievance had passed).

Plaintiff's contention that he could not obtain any grievance forms in order to re-submit his grievance, (Doc. 2, p. 16, ¶56; Doc. 30, pp. 4, 5), is not credible. To begin with, he never mentioned any difficulty getting grievance forms during the *Pavey* hearing. In fact, he changed his story entirely and testified that he resubmitted the grievances as soon as he received his counselor's response to the April 28th kite. Furthermore, the cumulative counseling summary indicates that Plaintiff's counselor received several kites from him in May 2020, none of which mentioned the need for grievance forms. *Roberson v. Lawrence, et al.*, SDIL Case No. 19-cv-1188, Doc. 50-2, p. 6. Plaintiff's counselor also had a number of face-to-face encounters with him while doing rounds in the segregation unit in May 2020, and there is no indication that he ever asked for grievance forms. *See id.* The Court thus concludes that Plaintiff opted not to follow the counselor's instructions to

resubmit his grievances, which means he failed to exhaust his administrative remedies prior to filing suit. But even if the Court found the opposite to be true and credited Plaintiff's other story that he immediately resubmitted the grievances after he received his counselor's response to the April 28th kite, he still did not allow adequate time for prison officials to investigate and respond to the grievances before tendering his amended complaint for filing in the original case. The earliest he could have possibly received his counselor's response was on the same day he submitted it: April 28 (or perhaps April 29), 2020. And his amended complaint was out of his hands by the time it was postmarked on May 22, 2020. Therefore, Plaintiff waited at the absolute most 24 days before bringing his claims in court. While the Illinois Administrative Code does not include a suggested timeframe for the counselor to respond to a grievance, *see* 20 ILL. ADMIN. CODE § 504.810 (2017), the Court is not convinced—and Plaintiff does not argue (*see* Doc. 30)—that 24 days, is a sufficient amount of time for an inmate to conclude that his attempts to exhaust have been thwarted.[8]

For these reasons, the Court concludes that the grievance process remained available to Plaintiff and he either opted not to use it or failed to allow sufficient time for

---

[8] *See Jackson v. Shepherd*, 552 Fed.Appx. 591, 592 (7th Cir. 2014) (inmate failed to exhaust where he filed suit only two weeks after submitting his grievance to counselor); *Jones v. Brookhart*, No. 21-CV-30-RJD, 2021 WL 6134553, at *3 (S.D. Ill. Dec. 29, 2021) (inmate failed to exhaust where he filed suit 18 days after submitting his grievance to his counselor); *Gurley v. Siddiqui*, No. 3:18-CV-473-MAB, 2020 WL 1158178, at *3 (S.D. Ill. Mar. 10, 2020) (inmate failed to exhaust where he filed suit 24 days after submitting his grievance to his counselor); *Sowemimo v. Bader*, No. CIV. 08-664-JPG, 2010 WL 2803982, at *7 (S.D. Ill. May 11, 2010), *report and recommendation adopted*, 2010 WL 2803980 (S.D. Ill. July 15, 2010) (inmate failed to exhaust where he filed suit 57 days after submitting his grievance to counselor). *But see Meyer v. Wexford Health Sources*, No. 3:16-CV-173-JPG-DGW, 2017 WL 1058831, at *4 (S.D. Ill. Feb. 16, 2017), *report and recommendation adopted*, 2017 WL 1048258 (S.D. Ill. Mar. 20, 2017) (grievance process rendered unavailable when inmate did not receive a response from his counselor within 60 days).

it to play out. Either way, he failed to exhaust his administrative remedies prior to filing suit and Defendants' motion for summary judgment is granted.

## CONCLUSION

Plaintiff's sur-reply (Doc. 41) is **STRICKEN**.

The motion for summary judgment on the issue of exhaustion filed by Defendants Justin Moore, Jason Morris, and Marcellus Ottensmeier (Doc. 27) is **GRANTED.** This case is dismissed without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: February 8, 2022**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## NOTICE

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining

the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and submitted on-time, the 30-day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only

on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for their prison trust fund accounts. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).